Present:   All the Justices

JAE-WOO CHA

OPINION BY JUSTICE LEROY R. HASSELL, SR.

v.  Record No. 003022          November 2, 2001

KOREAN PRESBYTERIAN CHURCH OF
WASHINGTON, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

In this appeal, we consider whether the First Amendment
to the Constitution of the United States and Article I, § 16
of the Constitution of Virginia prohibit the circuit court
from resolving a former pastor's claims against a church and
certain defendants who were involved in the church's
governance.

I.

Jae-Woo Cha filed a motion for judgment against the
Korean Presbyterian Church of Washington, Chi Whan Kim, Taek
Yong Kim, Yong Ho Kim, David Kwang Soo Han, Do Sik Ko, and
Jung Kook Kim.  The plaintiff alleged in his motion that the
Korean Presbyterian Church wrongfully terminated him from his
position as pastor, that certain defendants tortiously
interfered with his contract of employment with the church,
and that certain defendants committed acts of defamation
against him.

The individual defendants filed a motion to dismiss the
plaintiff's motion for judgment, asserting that the circuit

court lacked subject matter jurisdiction. They alleged that the First Amendment to the Constitution of the United States and Article I, § 16 of the Constitution of Virginia prohibited the circuit court from evaluating or interfering in matters of internal church discipline, policy, administration, and governance.

The circuit court considered the pleadings, memoranda, and argument of counsel. The court concluded that the First Amendment to the Constitution of the United States and Article I, § 16 of the Constitution of Virginia, which contain free exercise clauses, prohibited the court from interfering in ecclesiastical disputes when questions of faith or doctrine are involved. The court held that adjudication of the plaintiff's claims would require that the court involve itself in ecclesiastical concerns and thus, the court lacked subject matter jurisdiction to consider the plaintiff's motion for judgment. The court entered a final judgment in favor of the defendants, and the plaintiff appeals.

## II.

The plaintiff alleged the following relevant facts in his motion for judgment. The Korean Presbyterian Church is an unincorporated association located in Fairfax County. The church is affiliated with the Sejong Korean School and the Washington Theological Seminary. The church is governed by a

committee called the Session, which is also referred to as the Elders Committee.  This committee "is composed of senior members of the church."  The committee's decisions were subject to the approval of the senior pastor, defendant Taek Yong Kim, who retired from that position in April 2000.

Defendants Chi Whan Kim, David Kwang Soo Han, and Jung Kook Kim were members of the Elders Committee.  Chi Whan Kim also served as chairman of the church's Financial Committee.

Defendants Yong Ho Kim and Do Sik Ko served as deacons of the church.  The office of deacon is a "powerful position" within the church.

In October 1997, the church hired the plaintiff to serve as its educational pastor.  The plaintiff had an employment contract for a period of . . . years.  The plaintiff's "duties as an educational pastor . . . included, but were not limited to:  guiding the Church youth group; guiding the Friday evening prayer service; teaching as a professor at the [Washington Theological Seminary]; and, substituting for the senior pastor (the [d]efendant Taek Yong Kim) during the regular worship service when needed.  There were times in which the [p]laintiff's duties required him to lead the Church worship service and solicit collections from the congregation for the Church."

3

The plaintiff also served as the church's administrative pastor and in October 1999, he met with members of the church's congregation who suspected "that certain Church members and Church leaders had participated in financial impropriety with regard to funds belonging to the Church, the Sejong Korean School and the [Washington Theological Seminary]." The plaintiff and church parishioners who attended the meeting believed that an independent auditor should be retained to review the financial records of the church, the Sejong Korean School, and the Washington Theological Seminary.

Subsequently, Elder Chi Whan Kim learned that the plaintiff had participated in the meeting, confronted the plaintiff, and informed him "that his future employment at the Church was in jeopardy if he did not cease his advocacy of full disclosure of the Church's financial records." Senior Pastor Kim also learned that the plaintiff had participated in the meeting, and he "threatened the [p]laintiff. The senior pastor told the [p]laintiff that his future employment at the Church was in jeopardy if he continued to advocate for financial disclosure of the Church's financial records." Defendants Chi Kim, Jung Kim, and David Han "began meeting . . . together to discuss ways in which they could prevent full disclosure of the relevant financial material."

4

In November 1999, members of the church requested that "Senior Pastor [Kim] respond in writing to accusations that he participated in the misuse of Church funds."  During a meeting of the church's deacons in December 1999, defendant Do Sik Ko, "speaking to the entire meeting of [108] Deacons, [made] the following remarks to the [p]laintiff and the entire meeting of Deacons:  'One of our spiritual leaders, Reverend Cha, borrowed over $100,000 from believers and has not returned the money.' "  During that same meeting, defendant Yong Kim stated, "I have proof."  "Thus he implied that he had proof that the [p]laintiff borrowed over $100,000 from the congregation and had not repaid the money."

Defendant Chi Kim informed the deacons that the Elders Committee would meet immediately to resolve the allegations. The Elders Committee met on December 5, 1999 to discuss the allegations against the plaintiff.  "During that meeting . . . [d]efendants Jung [Kook] Kim, [Chi Whan Kim], and David Kwang Soo Han reported to the Elders Committee that the [p]laintiff had borrowed approximately $165,000 from the congregation. The [d]efendants Jung [Kook] Kim, Chi Whan Kim, and David Kwang Soo Han had no proof to support their statements."

On December 11, 1999, the Elders Committee voted to terminate the plaintiff's employment with the church if he did

5

not agree to resign.  The plaintiff refused to resign, and he was terminated on December 18, 1999.

The plaintiff alleged in his motion for judgment that he had a contract of employment that could only be terminated for good cause, and that the church wrongfully terminated him.  He also alleged that he was terminated in violation of the public policy of this Commonwealth.  The plaintiff further alleged that Yong Ho Kim, Do Sik Ko, Chi Whan Kim, Jung Kook Kim, David Kwang Soo Han, and Taek Yong Kim tortiously interfered with his contract of employment with the church, and that Do Sik Ko and Chi Whan Kim committed acts of defamation against him.

### III.

### A.

The plaintiff asserts that the circuit court erred by ruling it did not have subject matter jurisdiction to consider his wrongful termination claim against defendant Korean Presbyterian Church.  We disagree.

The First Amendment to the Constitution of the United States provides in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  Article I, § 16 of the Constitution of Virginia states, in part, that "religion or the duty which we owe to our Creator, and the manner of discharging it, can

6

be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience."

The United States Supreme Court, applying the First Amendment, has held that generally civil courts are not a constitutionally permissible forum for a review of ecclesiastical disputes.  Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 710 (1976); Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 449 (1969); Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church, 344 U.S. 94, 116 (1952); Gonzalez v. Roman Catholic Archbishop, 280 U.S. 1, 16-17 (1929); Watson v. Jones, 80 U.S. (13 Wall.) 679, 727 (1871).  Even though there are limited exceptions to this constitutional principle, it is well established that a civil court may neither interfere in matters of church government nor in matters of faith and doctrine.  Kedroff, 344 U.S. at 116; Reid v. Gholson, 229 Va. 179, 187, 327 S.E.2d 107, 111-12, cert. denied, 474 U.S. 824 (1985).

In Reid, we stated:

"The constitutional guarantees of religious
freedom have no deeper roots than in Virginia, where
they originated, and nowhere have they been more
scrupulously observed.  These principles prohibit
the civil courts from resolving ecclesiastical

disputes which depend upon inquiry into questions of faith or doctrine. [Presbyterian Church, 393 U.S. at 449]. The courts have, however, frequently been called upon to resolve disputes concerning the civil and property rights of religious bodies and church members. In such cases, there is a danger that the power of the state may be called upon to aid a faction espousing a particular doctrinal belief, or to 'become entangled in essentially religious controversies.' [Serbian Eastern Orthodox Diocese, 426 U.S. at 709.]"

229 Va. at 187, 327 S.E.2d at 111-12 (footnotes omitted).

The United States Court of Appeals for the Fourth Circuit has held, and we agree, that the "right to choose ministers without government restriction underlies the well-being of religious community . . . for perpetuation of a church's existence may depend upon those whom it selects to preach its values, teach its message, and interpret its doctrines both to its own membership and to the world at large. Any attempt by government to restrict a church's free choice of its leaders thus constitutes a burden on the church's free exercise rights." Rayburn v. General Conference of Seventh-Day Adventists, 772 F.2d 1164, 1167-68 (1985), cert. denied, 478 U.S. 1020 (1986) (footnote omitted); accord United Methodist Church, Baltimore Annual Conference v. White, 571 A.2d 790, 794 (D.C. 1990). See also Kedroff, 344 U.S. at 116.

We also observe that many courts have concluded that any attempt by civil courts to limit a church's choice of its religious representatives would constitute an impermissible

8

burden upon that church's First Amendment rights.  See <u>Minker</u> v. <u>Baltimore Annual Conference of United Methodist Church</u>, 894 F.2d 1354, 1359 (D.C. Cir. 1990); <u>Hutchison</u> v. <u>Thomas</u>, 789 F.2d 392, 394 (6th Cir.), <u>cert.</u> <u>denied</u>, 479 U.S. 885 (1986); <u>Kaufmann</u> v. <u>Sheehan</u>, 707 F.2d 355, 358-59 (8th Cir. 1983); <u>Simpson</u> v. <u>Wells Lamont Corp.</u>, 494 F.2d 490, 493-94 (5th Cir. 1974); <u>McClure</u> v. <u>Salvation Army</u>, 460 F.2d 553, 560-61 (5th Cir.), <u>cert.</u> <u>denied</u>, 409 U.S. 896 (1972).  <u>But</u> <u>see</u> <u>Moses</u> v. <u>Diocese of Colorado</u>, 863 P.2d 310, 319-21 (Colo. 1993), <u>cert.</u> <u>denied</u>, 511 U.S. 1137 (1994); <u>Marshall</u> v. <u>Munro</u>, 845 P.2d 424, 429 (Alaska 1993).  The United States Court of Appeals for the Fourth Circuit recently stated:

> "It has thus become established that the decisions of religious entities about the appointment and removal of ministers and persons in other positions of similar theological significance are beyond the ken of civil courts.  Rather, such courts must defer to the decisions of religious organizations 'on matters of discipline, faith, internal organization, or ecclesiastical rule, custom or law.'  [<u>Serbian Eastern Orthodox Diocese</u>, 426 U.S. at 713].  The Supreme Court explained, 'It is the essence of religious faith that ecclesiastical decisions are reached and are to be accepted as matters of faith whether or not rational or measurable by objective criteria.'  <u>Id.</u> at 714-15."

<u>Bell</u> v. <u>Presbyterian Church</u>, 126 F.3d 328, 331 (4th Cir. 1997).

Applying the aforementioned principles, we hold that the circuit court correctly concluded that it lacked subject

9

matter jurisdiction to review the plaintiff's claims against the Korean Presbyterian Church.  Resolution of the plaintiff's claims by a civil court would have required that the circuit court adjudicate issues regarding the church's governance, internal organization, and doctrine, and such judicial intervention would have limited the church's right to select its religious leaders.  The Free Exercise Clause of the First Amendment to the Constitution of the United States and Article I, § 16 of the Constitution of Virginia do not permit a circuit court to substitute its secular judgment for a church's judgment when the church makes decisions regarding the selection or retention of its pastor.

### B.

The plaintiff states that "he had an employment contract" and "at the very least, the [p]laintiff had an at-will employment relationship with the Church."  Continuing, the plaintiff contends that the circuit court had subject matter jurisdiction to consider his claim of tortious interference with contract against certain individual defendants.  We disagree with the plaintiff's contentions.

Assuming that the plaintiff had an at-will employment contract with the Korean Presbyterian Church, he was required to establish

10

> "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."

Duggin v. Adams, 234 Va. 221, 226, 360 S.E.2d 832, 835 (1987) (quoting Chaves v. Johnson, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985)).  Additionally, when "a contract is terminable at will . . . 'a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed "improper methods." ' "  Perk v. Vector Resources Group, 253 Va. 310, 314, 485 S.E.2d 140, 143 (1997) (citations omitted).

Without question, had the circuit court exercised subject matter jurisdiction of the plaintiff's motion for judgment, the court would have become entangled in issues regarding the church's governance as well as matters of faith and doctrine. And, as we have already held, ecclesiastical decisions regarding the appointment and removal of pastors are generally beyond the jurisdiction of secular courts.  Neither the federal Free Exercise Clause nor Article I, § 16 of the Constitution of Virginia permits a circuit court to decide whether the plaintiff had a valid contractual relationship or

11

business expectancy to serve as a pastor of the Korean Presbyterian Church.[1]

The plaintiff argues that when, as in this case, defendants employ acts of fraud and collusion thereby "causing a church as an employer to decide to terminate a clergyman, the court should be able to exercise jurisdiction over such a case of tortious inference with contract rights."  This contention is without merit because the plaintiff did not allege facts to support an assertion that his termination was fraudulent or collusive.

### C.

The plaintiff contends that the circuit court had subject matter jurisdiction to consider his defamation claims against the individual defendants.  We disagree.  The plaintiff alleged that "[a]n integral part of [his] position as an assistant pastor was to minister to the congregation and to assist in their spiritual growth" and that "these [d]efendants made statements which were defamatory to the [p]laintiff,

---

[1] The plaintiff alleged in his motion for judgment that he had a contract of employment with the church terminable solely for just cause.  The plaintiff does not argue in his brief that he had a contract terminable solely for cause. Nonetheless, we conclude that even if the plaintiff were able to prove that he had a contract terminable solely for cause with the church, the circuit court would have lacked subject matter jurisdiction to consider his claim because the court could not adjudicate such claim without considering issues regarding the church's governance, faith, and doctrine.

impugning his honesty and integrity, values which are essential in his success as a pastor."  The plaintiff alleged that "[t]he words each [d]efendant used imputed an unfitness to discharge his duties as a pastor at the Church, implied that he lacked integrity to be a pastor at the Church, and that he was harming the very people to whom he had committed to minister.  As such[,] the words were defamatory per se."

The plaintiff further alleged that the defamatory statements were made by Do Sik Ko, a deacon, during a meeting of the deacons.  The allegedly defamatory statements that defendant Chi Kim made were uttered during a meeting of the church's Elders Committee, of which Kim is a member.

We have recently stated:

> "At common law, defamatory words which are actionable per se are:
> "(1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.  (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society.  (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. (4) Those which prejudice such person in his or her profession or trade."

Perk, 253 Va. at 316, 485 S.E.2d at 144.  We have also stated that "a defamatory charge need not be made in direct terms; rather, it may be made 'by inference, implication[,] or

insinuation.' " Id. (quoting Carwile v. Richmond Newspapers, 196 Va. 1, 7, 82 S.E.2d 588, 592 (1954)).

Upon our review of the pleadings in this case, we hold that the plaintiff's allegations of defamation against the individual defendants cannot be considered in isolation, separate and apart from the church's decision to terminate his employment. The individual defendants who purportedly uttered defamatory remarks about the plaintiff were church officials who attended meetings of the church's governing bodies that had been convened for the purpose of discussing certain accusations against the plaintiff. We can only conclude that if a civil court were to exercise jurisdiction of the plaintiff's motion for judgment under these circumstances, the court would be compelled to consider the church's doctrine and beliefs because such matters would undoubtedly affect the plaintiff's fitness to perform pastoral duties and whether the plaintiff had been prejudiced in his profession. Neither the Free Exercise Clause nor Article I, § 16 of the Constitution of Virginia permits a civil court to undertake such a role.

Indeed, most courts that have considered the question whether the Free Exercise Clause divests a civil court of subject matter jurisdiction to consider a pastor's defamation claims against a church and its officials have answered that question in the affirmative. See Hutchison, 789 F.2d at 392-

14

93; <u>Simpson</u>, 494 F.2d at 492-93; <u>Higgins</u> v. <u>Maher</u>, 258 Cal. Rptr. 757, 761 (1989), <u>cert.</u> <u>denied</u>, 493 U.S. 1080 (1990) ("[i]f our civil courts enter upon disputes between bishops and priests because of allegations of defamation . . . it is difficult to conceive the termination case which could not result in a sustainable lawsuit"); <u>McManus</u> v. <u>Taylor</u>, 521 So.2d 449, 451 (La. Ct. App. 1988) ("[t]o allow defamation suits to be litigated to the fullest extent against members of a religious board who are merely discharging the duty which has been entrusted to them by their church could have a potentially chilling effect on the performance of those duties").[2]

D.

The plaintiff also contends that "[t]he actions of the individual defendants were outside whatever agency relationship with the Church and therefore are not entitled to the protection of the First Amendment Establishment Clause, and their acts of defamation and tortious interference with contract should not be considered to be actions of a church." The plaintiff's contention is without merit.

---

[2] We recognize that there may be rare situations in which a civil court may exercise jurisdiction of a plaintiff's tort claims against a church and its officials, but those circumstances are not present here.

Initially, we observe that the plaintiff did not plead in his motion for judgment that the individual defendants' actions were outside any agency relationship that may have existed between the individual defendants and the church. Rather, a fair reading of the plaintiff's motion for judgment inescapably leads to the conclusion that the plaintiff strongly implied that the defendants were acting as church officials. We will not permit the plaintiff to take one position in his motion for judgment and essentially disavow that position in his brief filed with this Court. Furthermore, questions regarding the scope of the individual defendants' duties within the church would require the court to entangle itself in issues of church governance, which is prohibited by the Free Exercise Clause and Article I, § 16 of the Constitution of Virginia.

We have considered the plaintiff's remaining arguments, and they are without merit.

IV.

We will affirm the judgment of the circuit court.

<u>Affirmed</u>.

16