Present:  All the Justices

ANDREW W. KOFFMAN, AN INFANT BY HIS
FATHER AND NEXT FRIEND,
RICHARD KOFFMAN, ET AL.

v.  Record No. 020439     OPINION BY JUSTICE ELIZABETH B. LACY
                                      January 10, 2003
JAMES GARNETT

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
George E. Honts, III, Judge

In this case we consider whether the trial court properly dismissed the plaintiffs' second amended motion for judgment for failure to state causes of action for gross negligence, assault, and battery.

Because this case was decided on demurrer, we take as true all material facts properly pleaded in the motion for judgment and all inferences properly drawn from those facts. Burns v. Board of Supvrs., 218 Va. 625, 627, 238 S.E.2d 823, 824-25 (1977).

In the fall of 2000, Andrew W. Koffman, a 13-year old middle school student at a public school in Botetourt County, began participating on the school's football team.  It was Andy's first season playing organized football, and he was positioned as a third-string defensive player.  James Garnett was employed by the Botetourt County School Board as an assistant coach for the football team and was responsible for

the supervision, training, and instruction of the team's defensive players.

The team lost its first game of the season. Garnett was upset by the defensive players' inadequate tackling in that game and became further displeased by what he perceived as inadequate tackling during the first practice following the loss.

Garnett ordered Andy to hold a football and "stand upright and motionless" so that Garnett could explain the proper tackling technique to the defensive players. Then Garnett, without further warning, thrust his arms around Andy's body, lifted him "off his feet by two feet or more," and "slamm[ed]" him to the ground. Andy weighed 144 pounds, while Garnett weighed approximately 260 pounds. The force of the tackle broke the humerus bone in Andy's left arm. During prior practices, no coach had used physical force to instruct players on rules or techniques of playing football.

In his second amended motion for judgment, Andy, by his father and next friend, Richard Koffman, and Andy's parents, Richard and Rebecca Koffman, individually, (collectively "the Koffmans") alleged that Andy was injured as a result of Garnett's simple and gross negligence and intentional acts of assault and battery. Garnett filed a demurrer and plea of sovereign immunity, asserting that the second amended motion

2

for judgment did not allege sufficient facts to support a lack of consent to the tackling demonstration and, therefore, did not plead causes of action for either gross negligence, assault, or battery. The trial court dismissed the action, finding that Garnett, as a school board employee, was entitled to sovereign immunity for acts of simple negligence and that the facts alleged were insufficient to state causes of action for gross negligence, assault, or battery because the instruction and playing of football are "inherently dangerous and always potentially violent."

In this appeal, the Koffmans do not challenge the trial court's ruling on Garnett's plea of sovereign immunity but do assert that they pled sufficient facts in their second amended motion for judgment to sustain their claims of gross negligence, assault, and battery.

I.

In Ferguson v. Ferguson, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971), this Court defined gross negligence as "that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded [people] although something less than willful recklessness." Whether certain actions constitute gross negligence is generally a

3

factual matter for resolution by the jury and becomes a question of law only when reasonable people cannot differ. Griffin v. Shively, 227 Va. 317, 320, 315 S.E.2d 210, 212 (1984).

The disparity in size between Garnett and Andy was obvious to Garnett. Because of his authority as a coach, Garnett must have anticipated that Andy would comply with his instructions to stand in a non-defensive, upright, and motionless position. Under these circumstances, Garnett proceeded to aggressively tackle the much smaller, inexperienced student football player, by lifting him more than two feet from the ground and slamming him into the turf. According to the Koffmans' allegations, no coach had tackled any player previously so there was no reason for Andy to expect to be tackled by Garnett, nor was Andy warned of the impending tackle or of the force Garnett would use.

As the trial court observed, receiving an injury while participating in a tackling demonstration may be part of the sport. The facts alleged in this case, however, go beyond the circumstances of simply being tackled in the course of participating in organized football. Here Garnett's knowledge of his greater size and experience, his instruction implying that Andy was not to take any action to defend himself from the force of a tackle, the force he used during the tackle,

4

and Garnett's previous practice of not personally using force to demonstrate or teach football technique could lead a reasonable person to conclude that, in this instance, Garnett's actions were imprudent and were taken in utter disregard for the safety of the player involved. Because reasonable persons could disagree on this issue, a jury issue was presented, and the trial court erred in holding that, as a matter of law, the second amended motion for judgment was inadequate to state a claim for gross negligence.

## II.

The trial court held that the second amended motion for judgment was insufficient as a matter of law to establish causes of action for the torts of assault and battery. We begin by identifying the elements of these two independent torts. See Charles E. Friend, Personal Injury Law in Virginia § 6.2.1 (2d ed. 1998). The tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery. Restatement (Second) of Torts § 21 (1965); Friend § 6.3.1 at 226; Fowler V. Harper, et al., The Law of Torts § 3.5 at 3:18-:19 (3d ed. Cum. Supp. 2003).

The tort of battery is an unwanted touching which is neither consented to, excused, nor justified. See Washburn v.

5

_Klara_, 263 Va. 586, 561 S.E.2d 682 (2002); _Woodbury v. Courtney_, 239 Va. 651, 391 S.E.2d 293 (1990). Although these two torts "go together like ham and eggs," the difference between them is "that between physical contact and the mere apprehension of it. One may exist without the other." W. Page Keeton, Prosser and Keeton on Torts § 10 at 46; _see also_ Friend § 6.3.

The Koffmans' second amended motion for judgment does not include an allegation that Andy had any apprehension of an immediate battery. This allegation cannot be supplied by inference because any inference of Andy's apprehension is discredited by the affirmative allegations that Andy had no warning of an imminent forceful tackle by Garnett. The Koffmans argue that a reasonable inference of apprehension can be found "in the very short period of time that it took the coach to lift Andy into the air and throw him violently to the ground." At this point, however, the battery alleged by the Koffmans was in progress. Accordingly, we find that the pleadings were insufficient as a matter of law to establish a cause of action for civil assault.

The second amended motion for judgment is sufficient, however, to establish a cause of action for the tort of battery. The Koffmans pled that Andy consented to physical contact with players "of like age and experience" and that

neither Andy nor his parents expected or consented to his "participation in aggressive contact tackling by the adult coaches." Further, the Koffmans pled that, in the past, coaches had not tackled players as a method of instruction. Garnett asserts that, by consenting to play football, Andy consented to be tackled, by either other football players or by the coaches.

Whether Andy consented to be tackled by Garnett in the manner alleged was a matter of fact. Based on the allegations in the Koffmans' second amended motion for judgment, reasonable persons could disagree on whether Andy gave such consent. Thus, we find that the trial court erred in holding that the Koffmans' second amended motion for judgment was insufficient as a matter of law to establish a claim for battery.

For the above reasons, we will reverse the trial court's judgment that the Koffmans' second amended motion for judgment was insufficient as a matter of law to establish the causes of actions for gross negligence and battery and remand the case for further proceedings consistent with this opinion.[*]

Reversed and remanded.

---

[*] Because we have concluded that a cause of action for an intentional tort was sufficiently pled, on remand, the Koffmans may pursue their claim for punitive damages.

7

JUSTICE KINSER, concurring in part and dissenting in part.

I agree with the majority opinion except with regard to the issue of consent as it pertains to the intentional tort of battery. In my view, the second amended motion for judgment filed by the plaintiffs, Andrew W. Koffman, by his father and next friend, and Richard Koffman and Rebecca Koffman, individually, was insufficient as a matter of law to state a claim for battery.[*]

Absent fraud, consent is generally a defense to an alleged battery. See Banovitch v. Commonwealth, 196 Va. 210, 219, 83 S.E.2d 369, 375 (1954); Perkins v. Commonwealth, 31 Va. App. 326, 330, 523 S.E.2d 512, 513 (2000); People ex rel. Arvada v. Nissen, 650 P.2d 547, 551 (Colo. 1982); Bergman v. Anderson, 411 N.W.2d 336, 339 (Neb. 1987); Willey v. Carpenter, 23 A. 630, 631 (Vt. 1891); Restatement (Second) of Torts § 13, cmt. d (1965). In the context of this case, "[t]aking part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages." Restatement (Second) of Torts § 50, cmt. b (1965), quoted in Thompson v. McNeill, 559

---

[*] Although the circuit court sustained the demurrer with regard to the alleged battery on the basis that an intention to batter and inflict injury on Andy could not be inferred from the alleged facts, the majority does not address that holding. Since the majority discusses only the issue of consent, I confine my dissent to that question.

N.E.2d 705, 708 (Ohio 1990); see also Kabella v. Bouschelle, 672 P.2d 290, 292 (N.M. Ct. App. 1983). However, participating in a particular sport "does not manifest consent to contacts which are prohibited by rules or usages of the game if such rules or usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill." Restatement (Second) of Torts § 50, cmt. b (1965) quoted in Thompson, 559 N.E.2d at 708; see also Kabella, 672 P.2d at 292.

The thrust of the plaintiffs' allegations is that they did not consent to "Andy's participation in aggressive contact tackling by the adult coaches" but that they consented only to Andy's engaging "in a contact sport with other children of like age and experience." They further alleged that the coaches had not previously tackled the players when instructing them about the rules and techniques of football.

It is notable, in my opinion, that the plaintiffs admitted in their pleading that Andy's coach was "responsible . . . for the supervision, training and instruction of the defensive players." It cannot be disputed that one responsibility of a football coach is to minimize the possibility that players will sustain "something more than slight injury" while playing the sport. Vendrell v. School District No. 26C, Malheur County, 376 P.2d 406, 413 (Ore.

9

1962).  A football coach cannot be expected "to extract from the game the body clashes that cause bruises, jolts and hard falls."  Id.  Instead, a coach should ensure that players are able to "withstand the shocks, blows and other rough treatment with which they would meet in actual play" by making certain that players are in "sound physical condition," are issued proper protective equipment, and are "taught and shown how to handle [themselves] while in play."  Id.  The instruction on how to handle themselves during a game should include demonstrations of proper tackling techniques.  Id.  By voluntarily participating in football, Andy and his parents necessarily consented to instruction by the coach on such techniques.  The alleged battery occurred during that instruction.

The plaintiffs alleged that they were not aware that Andy's coach would use physical force to instruct on the rules and techniques of football since neither he nor the other coaches had done so in the past.  Surely, the plaintiffs are not claiming that the scope of their consent changed from day to day depending on the coaches' instruction methods during prior practices.  Moreover, they did not allege that they were told that the coaches would not use physical demonstrations to instruct the players.

Additionally, the plaintiffs did not allege that the tackle itself violated any rule or usage of the sport of football. Nor did they plead that Andy could not have been tackled by a larger, physically stronger, and more experienced player either during a game or practice. Tackling and instruction on proper tackling techniques are aspects of the sport of football to which a player consents when making a decision to participate in the sport.

In sum, I conclude that the plaintiffs did not sufficiently plead a claim for battery. We must remember that acts that might give rise to a battery on a city street will not do so in the context of the sport of football. See Thompson, 559 N.E.2d at 707. We must also not blur the lines between gross negligence and battery because the latter is an intentional tort. I agree fully that the plaintiffs alleged sufficient facts to proceed with their claim for gross negligence.

For these reasons, I respectfully concur, in part, and dissent, in part, and would affirm the judgment of the circuit court sustaining the demurrer with regard to the claim for battery.