Present:  All the Justices

DAVID M. BOWIE

v.  Record No. 050728

JAMES T. MURPHY, JR., ET AL.

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
January 13, 2006

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane M. Roush, Judge

In this appeal, we consider whether the circuit court erred in sustaining demurrers to plaintiff's assault claim and defamation claims against the pastor and other members of plaintiff's church.

BACKGROUND

Since this appeal comes to us from a circuit court's decision sustaining a demurrer, we "recite as true the well-pleaded facts in the motion for judgment."[1]  Sanchez v. Medicorp Health Sys., 270 Va. 299, 301 n. 1, 618 S.E.2d 331, 332 n. 1 (2005) (citing Thompson v. Skate America, Inc., 261 Va. 121, 124-25, 540 S.E.2d 123, 124 (2001)).

As alleged in the motion for judgment, David M. Bowie is a member of the Board of Deacons of Greater Little Zion

---

[1] As is explained infra, the circuit court ruled that Bowie failed to state a cause of action for assault in his motion for judgment, but granted Bowie leave to file an amended motion for judgment on his assault claim.  The relevant facts are essentially the same in the motion for judgment and the amended motion for judgment.

Baptist Church (the Church), a congregational church located in Fairfax County.  James T. Murphy, Jr. became pastor of the Church in 1990.  The Church experienced "divisiveness and strife" under Murphy's leadership.  Ultimately, in 2003, the strife became so pervasive that members of the congregation, in accordance with the Church constitution, petitioned the Board of Deacons for the removal of Murphy as pastor.

Upon receiving the petition, the Board of Deacons sent a letter to the congregation on June 6, 2003 informing the church members that a vote on whether to retain Murphy as pastor would take place on June 21, 2003.  The vote took place at the Church as scheduled.  Supporters of Murphy, including Audrey Thornton, attended the meeting to disrupt, intimidate, harass, and coerce congregation members who were trying to vote.  Thornton brought two of her children to help her disrupt the vote, and she used Church computers and printers to produce placards and posters reflecting her support of Murphy.  Thornton's children placed the placards around the designated voting area while Thornton was in an upstairs area.  When members of the Board of Deacons removed the placards, Thornton's daughter went to the upstairs area and informed Thornton, who became "enraged."

At this time, Bowie and another Deacon were standing at the base of some steps directly adjacent to the voting area. Thornton, displaying an "extraordinary and visibly angry look on her face," charged down the stairs past Bowie and the other Deacon, both of whom had been assigned to provide security to the voting area. Thornton, carrying a large camera in her right hand, forcefully opened the door to the voting area. The door automatically closed behind her. Bowie observed bright flashes of light and opened the door. Once inside the voting area, Bowie saw Thornton taking pictures and writing down the names of poll workers, voters, and staffers.

Bowie approached Thornton, who had her back to Bowie, and asked Thornton what she was doing. However, apparently due to noise in the room, Thornton did not hear Bowie. Bowie then "gently touched the right shoulder of Thornton in order to gain her attention and again called her by name." Thornton looked back over her right shoulder, realized it was Bowie, and cursed him. Thornton then attempted to strike Bowie with the camera she held in her right hand.

In order to protect himself from being struck, Bowie grasped Thornton's right wrist. Thornton "violently pushed

3

back and forth" to free her wrist, which caused Bowie to take several steps backward into a hallway. In the hallway, Bowie released Thornton's wrist and verbally tried to calm her. Upon her release, Thornton put the camera in her left hand and struck Bowie in the chest with her right hand.

Bowie immediately called the Fairfax County Police Department. Police arrived and took statements from a number of people. Thornton "willfully, falsely, and with malice" told police and Church members, including Murphy, that Bowie had assaulted her. She also solicited others who were not witnesses to the incident to provide false information and statements to the Fairfax County police.

Thereafter, on July 1, Murphy called a Church meeting while Bowie was on vacation. At the meeting, Murphy told the congregation that Bowie had assaulted Thornton. Murphy also called for a motion to have Bowie dismissed as a deacon and to have Bowie's church membership demoted from "full" status to "watch care." Vivian Pace made the motion based on Bowie's "alleged assault" of Thornton. LaJuanna Russell seconded the motion "on the same basis." On July 10, Murphy sent a letter to the congregation accusing Bowie of assault against Thornton. Subsequently, David Pace and

4

Vivian Pace sent e-mails to "numerous" third parties accusing Bowie of assaulting Thornton.

On June 17, 2004, Bowie filed a motion for judgment in the Circuit Court of Fairfax County against Murphy, Vivian Pace, David Pace, LaJuanna Russell, and Audrey Thornton (collectively, the defendants). The motion for judgment included one count for assault, three counts for defamation, and one count for intentional infliction of emotional distress.[2] The assault claim was directed against Thornton for striking Bowie in the chest.[3] The defamation claims stemmed exclusively from the defendants' accusations that Bowie assaulted Thornton, which Bowie asserted were made with knowledge of the falsity of the allegation or reckless disregard for the truth.

---

[2] The circuit court subsequently sustained a demurrer to Bowie's intentional infliction of emotional distress claim because Bowie failed to allege that the defendants engaged in conduct sufficient to constitute a cause of action. Bowie does not assign error to this decision. Bowie's motion for judgment also included a claim under the Virginia Computer Crimes Act, Code § 18.2-152.12. However, Bowie later conceded that he had no cause of action under this section. Accordingly, these claims are not at issue in this appeal.

[3] Bowie conflated the tort of assault and the tort of battery in his motion for judgment. These are two separate torts. See Koffman v. Garnett, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003). However, Bowie distinguishes between the two torts in his amended motion for judgment.

The defendants filed a demurrer and special plea in bar asserting that the circuit court did not have subject matter jurisdiction pursuant to Cha v. Korean Presbyterian Church, 262 Va. 604, 610-12, 553 S.E.2d 511, 513-15 (2001), because the allegations of defamation involved matters of church governance and doctrine. The demurrer also asserted that since Bowie initiated contact with Thornton, his assault claim must fail. Additionally, the demurrer asserted that as a consequence of Bowie's initiating contact with Thornton, his claims of defamation must fail as well, because truth is an absolute defense to defamation.

The circuit court held a hearing on the defendants' demurrer and on a motion filed by Bowie for leave to amend his motion for judgment. By order entered on October 21, 2004, the circuit court sustained the defendants' demurrer on the defamation counts without granting leave to amend. The court reasoned that the defamation counts "clearly fall under the Cha case" because any "defamatory statements . . . were made in connection with the church's business" and, thus, the court did not have subject matter jurisdiction. Bowie objected to the court's order on the defamation counts.

6

The circuit court also sustained the defendants' demurrer to Bowie's assault claim, accepting their assertion that Bowie failed to state a cause of action for assault because he failed to allege a physical injury. The circuit court, however, granted Bowie leave to amend the assault claim within 21 days. Although Bowie did not object to the court's ruling on the assault claim at the hearing or in the court's order, Bowie filed an amended motion for judgment for assault on October 29, 2004.

In his amended motion for judgment, Bowie alleged that Thornton's attempt to strike him with the camera "placed [Bowie] in reasonable fear of physical injury and as such committed the offense of assault." Bowie also alleged that when Thornton struck him in the chest, it was in a "clear and unlawful attempt to inflict injury upon [Bowie]" and thus Thornton committed an assault. Bowie did not allege in the amended motion for judgment that he suffered physical injury as a result of Thornton's actions, even though failure to plead physical injury was the ground upon which the circuit court had sustained the demurrer to his assault claim in the original motion for judgment. Additionally, Bowie alleged that since Murphy "encouraged

7

the unlawful conduct" of Thornton, Murphy was also liable for assault.[4]

The remaining defendants filed a demurrer to the amended motion for judgment on November 22, 2004, claiming that Bowie did not state a cause of action for assault because he once again failed to allege a physical injury. A hearing on the demurrer was scheduled. Although Bowie was given notice of the hearing, he did not appear. On January 7, 2005, the circuit court issued a final order sustaining the defendants' demurrer.[5] The order does not state the circuit court's grounds for sustaining the demurrer. Bowie filed a notice of appeal on January 19, 2005.

_____

[4] In addition to his assault claims, Bowie included in his amended motion for judgment a claim for battery. However, the circuit court's October 21 order only granted Bowie leave to amend Count 1 of his motion for judgment, and Count 1 was clearly labeled "assault" in the motion for judgment. Accordingly, the inclusion of a battery claim exceeded the scope of the court's leave to amend and is, therefore, barred.

[5] The day after the defendants filed their demurrer to Bowie's amended motion for judgment, Bowie filed a motion for nonsuit. The circuit court did not hold a hearing or issue an order regarding the nonsuit. Although Code § 8.01-380 entitles Bowie to one nonsuit as a matter of right, the termination of litigation by nonsuit does not occur until a circuit court enters an appropriate order. The record does not reflect that Bowie formally requested the circuit court to rule on his motion for a nonsuit. See Nash v. Jewell, 227 Va. 230, 237, 315 S.E.2d 825, 829 (1984).

We granted Bowie this appeal limited to the issues whether the circuit court erred in its October 21, 2004 ruling that Bowie's defamation claims are barred by our decision in Cha and in sustaining the defendants' demurrer to Bowie's amended motion for judgment for assault.

### DISCUSSION

We first address whether the circuit court erred in sustaining the demurrer to Bowie's defamation claims. The circuit court sustained the demurrer solely on the ground that addressing these claims would necessarily involve issues of church governance. The Cha case clearly bars courts from hearing such cases. Thus, our analysis of this issue is limited to whether Cha, and the constitutional precepts upon which Cha is premised, bar the circuit court from hearing Bowie's defamation claims.

As a general rule, courts lack subject matter jurisdiction to resolve issues of church governance and disputes over religious doctrine. This prohibition arises from the religion clauses of the Constitution of the United States and the Constitution of Virginia. The First Amendment to the Constitution of the United States provides, in relevant part, that "Congress shall make no

law respecting an establishment of religion, or prohibiting the free exercise thereof."  Similarly, the Constitution of Virginia, Article 1, § 16 provides that "religion or the duty which we owe to our Creator, and the manner of discharging it, can be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience."

First Amendment jurisprudence is clear, and we have stated, that "civil courts are not a constitutionally permissible forum for a review of ecclesiastical disputes." Cha, 262 Va. at 610, 553 S.E.2d at 514; see Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 710 (1976); Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 449 (1969).  While what is or is not an "ecclesiastical dispute" is often debatable, issues of church governance and matters of faith and doctrine are unquestionably outside the jurisdiction of the civil courts.  Reid v. Gholson, 229 Va. 179, 187, 327 S.E.2d 107, 111-12 (1985).  When, as here, a case involves a quarrel among church members and/or leaders, a court must determine the likelihood that, in trying the issues presented to the court, the court will be confronted with

10

questions of religious governance or doctrine.  See Cha,
262 Va. at 610, 553 S.E.2d at 514.  When the court properly
determines that it will "become entangled in issues
regarding the church's governance as well as matters of
faith and doctrine," the court must, as in Cha, dismiss the
case for lack of subject matter jurisdiction.  Id. at 613,
553 S.E.2d at 515.

The circuit court in this case determined that the
resolution of Bowie's defamation claims would involve
issues and decisions properly left under the exclusive
control of the Church.  However, we distinguish the issues
presented here from those presented in Cha and hold that
the circuit court may resolve Bowie's defamation claims
without running afoul of constitutional restrictions.

In Cha, the plaintiff had served for two years as the
educational and administrative pastor for the Korean
Presbyterian Church.  262 Va. at 608-09, 553 S.E.2d at 512-
13.  The plaintiff met with church members who suspected
that certain church officials were misusing church funds.
Id.  When the plaintiff supported hiring an independent
auditor to investigate the church's finances, a church
elder threatened to terminate the plaintiff's employment.
At a subsequent meeting another church official accused the

plaintiff of borrowing over $100,000 from the church, which he had not repaid. Id. The plaintiff was subsequently fired. The plaintiff filed a motion for judgment claiming wrongful termination, tortious interference with his employment contract, and defamation. Id. at 610, 553 S.E.2d at 513.

In affirming the circuit court's ruling that it lacked subject matter jurisdiction, this Court concluded that if the circuit court tried the case, it would have "become entangled in issues regarding the church's governance as well as matters of faith and doctrine." Cha, 262 Va. at 613, 553 S.E.2d at 515. Specifically addressing the plaintiff's defamation claims, the Court stated that

> we hold that the plaintiff's allegations of defamation against the individual defendants cannot be considered in isolation, separate and apart from the church's decision to terminate his employment. The individual defendants who purportedly uttered defamatory remarks about the plaintiff were church officials who attended meetings of the church's governing bodies that had been convened for the purpose of discussing certain accusations against the plaintiff. We can only conclude that if a civil court were to exercise jurisdiction of the plaintiff's motion for judgment under these circumstances, the court would be compelled to consider the church's doctrine and beliefs because such matters would undoubtedly affect the plaintiff's fitness to perform pastoral duties and whether plaintiff had been prejudiced in his profession.

Id. at 615, 553 S.E.2d at 516.

12

Unlike the circumstances in Cha, where the plaintiff's defamation claims were so connected to his wrongful termination claim as to mix with "ecclesiastical decisions regarding the appointment and removal" of church officials, Bowie's defamation claims do not involve matters of church governance.  See id. at 613, 553 S.E.2d at 515.  Rather, Bowie's defamation claims arise solely from allegations made by the defendants that Bowie perpetrated an assault. The circuit court can evaluate these statements for their veracity and the impact they had on Bowie's reputation the same as if the statements were made in any other, non-religious context.  While it is clear that some of the allegedly defamatory statements were made at a church meeting in which Bowie's status as deacon was the primary issue, Bowie pled his defamation claims in such a manner that the circuit court, unlike the trial court in Cha, can consider them in isolation, separate and apart from the church governance issue involved in Bowie's status as a deacon.

We have previously explained that "where church property and civil rights disputes can be decided without reference to questions of faith and doctrine, there is no constitutional prohibition against their resolution by the

13

civil courts." Reid, 229 Va. at 187, 327 S.E.2d at 112;
see Jones v. Wolf, 443 U.S. 595 (1979). Thus, a circuit
court's determination "is simply whether the court can
decide the case by reference to neutral principles of law,
without reference to issues of faith and doctrine." Reid,
229 Va. at 188, 327 S.E.2d at 112. We hold that the
circuit court has subject matter jurisdiction over Bowie's
defamation claims because the claims can be decided without
addressing issues of faith and doctrine. Specifically, the
circuit court need not become involved with the underlying
dispute among the congregation of the church regarding
Murphy as pastor.

Next, we turn to the issue whether the circuit court
erred in sustaining the defendants' demurrer to Bowie's
assault claim. In the January 7, 2005 order, the circuit
court did not state its grounds for sustaining the
defendants' demurrer, although the demurrer was based on
Bowie's failure to allege that he suffered a physical
injury. We hold that the circuit court erred because Bowie
sufficiently pled a cause of action for assault against
Thornton in his amended motion for judgment.

To prove assault, a plaintiff must show that the
defendant "performed 'an act intended to cause either

14

harmful or offensive contact with another person or apprehension of such contact, and that creates in the other person's mind a reasonable apprehension of an imminent battery.'  There is no requirement that the victim of such acts be physically touched."  Etherton v. Doe, 268 Va. 209, 213, 597 S.E.2d 87, 89 (2004) (quoting Koffman v. Garnett, 265 Va. 12, 16-17, 574 S.E.2d 258, 261 (2003)); see also Carter v. Commonwealth 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005) (an assault, "whether a crime or tort, occurs when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm or engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim").

In the amended motion for judgment, Bowie alleged two separate instances of assault by Thornton.  Both of these allegations state a cause of action for the tort of assault under the definition of that tort in Etherton.  First, Bowie alleged that Thornton attempted to strike Bowie with a camera, placing Bowie in fear of physical injury.  This allegation of fact was sufficient to plead the elements of assault because both an attempt by Thornton to cause harmful contact and a reasonable apprehension by Bowie that

15

he would be struck were asserted.  Second, Bowie alleged that Thornton actually struck him in the chest while he verbally tried to calm her.  This allegation of fact was also sufficient to plead the elements of assault because it asserted that Thornton intended to strike Bowie in the chest and, since Bowie alleged he was speaking with Thornton when she struck him, it reasonably can be inferred that Bowie anticipated being struck.  The fact that Thornton actually completed the battery by making contact with Bowie does not negate the assault claim that arises from Bowie's anticipation of the battery.  Assault and battery are two separate and independent torts.  See Koffman, 265 Va. at 16, 574 S.E.2d at 261.

Finally, we note that Bowie's failure to allege that he suffered a physical injury is of no import to the analysis of whether Bowie stated a cause of action for assault because physical injury is not an element of the tort of assault.  Carter, 269 Va. at 47, 606 S.E.2d at 841; see also Charles E. Friend, Personal Injury Law in Virginia, 6.3.1 at 183 (3d ed. 2003) ("No actual contact is required for assault.  Similarly, no physical injury need be involved.").  Rather, the resulting injury from assault is that the "threatening gesture, creating the

16

apprehension, is . . . actionable without actual damage. It is, in effect, a form of _mental_ injury which is being compensated." Id. (Emphasis in original.)

In his amended motion for judgment, Bowie also asserted assault claims against Murphy. However, the circuit court, in its October 21 order, only gave Bowie leave to amend his assault claims in Count 1, which had been pled solely against Thornton. Bowie did not object to that determination. Bowie's inclusion of assault claims against Murphy in his amended motion for judgment thus exceeded the scope of the circuit court's grant of leave to amend. Accordingly, Bowie's claims for assault against Murphy were not properly asserted and we need not address them further. See Mechtensimer v. Wilson, 246 Va. 121, 122-23, 431 S.E.2d 301, 302 (1993) (purported amendment without permission was void).

For these reasons, the judgment of the circuit court sustaining the defendants' demurrer will be reversed and the case remanded for further proceedings with regard to Bowie's assault claims against Thornton and his defamation claims against the defendants.

Reversed and remanded.

JUSTICE AGEE, with whom JUSTICE KINSER joins, concurring in part and dissenting in part.

I write separately because I find that our decision in Jae-Woo Cha v. Korean Presbyterian Church, 262 Va. 604, 553 S.E.2d 511 (2001), does bar David M. Bowie's defamation claims against Vivian Pace and LaJuanna Russell as stated in paragraphs 55 through 58 of Count II of the motion for judgment. In all other respects, I concur with the majority's opinion that Cha does not operate to bar resolution of Bowie's other defamation claims against the defendants. I also agree that Bowie's motion for judgment sufficiently stated a claim for assault against Audrey Thornton, and that Bowie's assault claims against Murphy alleged in his amended motion for judgment are not properly before this Court.

Bowie alleges in Count II that Reverend James T. Murphy called a church meeting and "accuse[d] [Bowie] (verbally) . . . of having committed the crime of assault against defendant Thornton." In the concluding paragraphs of Count II, 55 through 58, Bowie alleges Vivian Pace and LaJuanna Russell also defamed him. Specifically Bowie alleges Pace "made a motion to remove [Bowie] as a Deacon of the [church] and to reduce his membership status to that of watch care based on [his] 'alleged assault of defendant

18

Thornton.' " LaJuanna Russell "seconded the motion of defendant Pace on the same basis." In paragraph 56, Bowie identifies the act of defamation, as to both women, to be their "recommendations" regarding his office as Deacon and change in his church membership status "in a reckless disregard for the truth."

We said in Cha that "civil courts are not a constitutionally permissible forum for a review of ecclesiastical disputes," 262 Va. at 610, 553 S.E.2d at 514, and the majority correctly notes that "when . . . a case involves a quarrel among church members . . . a court must determine the likelihood that, in trying the issues presented to the court, the court will be confronted with questions of religious governance or doctrine." Because I find that Bowie's defamation claims against defendants Pace and Russell in Count II necessarily implicate "questions of religious governance or doctrine," I respectfully dissent from that portion of the majority's opinion.

Unlike the other defamation claims, Bowie's allegations against Pace and Russell in Count II are not that the two separately accused Bowie of assaulting Thornton, but that because of that accusation, they "made a motion to remove [Bowie] as a Deacon . . . and to reduce

19

his membership status [from "full"] to that of watch care." The trial court found this "motion" particularly significant in deciding to sustain the defendants' demurrer to Count II of Bowie's motion for judgment:

> [T]he only allegations against Ms. Russell . . . were [that] she seconded a motion made at the church meeting, and I think that's purely a matter of the church's governance that the Courts simply should not involve themselves in under the Cha case and other cases cited in the Cha case.

I agree with the trial court on this point and believe that the majority's decision with regard to the claims against Pace and Russell in Count II contravenes our previous holding that "the decisions of religious entities about the appointment and removal of ministers and persons in other positions of similar theological significance are beyond the ken of civil courts." Id. at 612, 553 S.E.2d at 515 (citing Bell v. Presbyterian Church, 126 F.3d 328, 331 (4th Cir. 1997)).

In Cha, the plaintiff alleged that the defamatory accusations against him "imputed an unfitness to discharge his duties as a pastor at the Church [and] implied that he lacked integrity to be a pastor." Id. at 614, 553 S.E.2d at 516. We held in that case that the trial court correctly concluded "that adjudication of the plaintiff's claims would require that the court involve itself in

20

ecclesiastical concerns," Id. at 608, 553 S.E.2d at 512,
because the defamation allegations "cannot be considered in
isolation, separate and apart from the church's decision to
terminate his employment." Id. at 615, 553 S.E.2d at 516.
Further, we noted that because the defamation defendants
"attended meetings of the church's governing bodies that
had been convened for the purpose of discussing certain
accusations against the plaintiff," deciding the
plaintiff's claim on the merits would compel a court "to
consider the church's doctrine and beliefs [as] such
matters would undoubtedly affect the plaintiff's fitness to
perform pastoral duties." Id.

Similarly, Pace and Russell's allegedly defamatory
statements took place at a church meeting at which Bowie's
church membership status and position as deacon were
debated. According to the allegations in Bowie's pleading,
Pace and Russell made recommendations to remove Bowie from
the office of deacon and reduce his church membership
status because of his alleged assault of Thornton, solely
in the context of the church governance decision as to
Bowie's church status. Their alleged recitation of a
defamatory statement cannot be considered in isolation from

21

the context in which uttered: the process of church governance regarding Bowie's status in the church.

I can see no substantive distinction between the alleged defamatory statements by the defendants at the church meeting to remove Reverend Cha as a pastor and those made in the case at bar by Pace and Russell to remove Bowie as a deacon and to alter his membership status. Whatever the basis of Pace and Russell in proposing the motion to change Bowie's status, the statements and action were an integral part of church governance and internal organization. It is as true in this case as in Cha that

> [r]esolution of the plaintiff's claims by a civil court would have required that the circuit court adjudicate issues regarding the church's governance, internal organization, and doctrine, and such judicial intervention would have limited the church's right to select its religious leaders.

Id. at 612, 553 S.E.2d at 515.

Church membership and church leadership are clearly beyond the purview of the courts. We have held that

> [the] right to choose ministers without government restriction underlies the well-being of religious community . . . for perpetuation of a church's existence may depend upon those whom it selects to preach its values, teach its message, and interpret its doctrines both to its own membership and to the world at large. Any attempt by government to restrict a church's free choice of its leaders thus constitutes a burden on the church's free exercise rights.

22

Id. at 611, 553 S.E.2d at 514 (citing Rayburn v. General Conference of Seventh-Day Adventists, 772 F.2d 1164, 1167-68 (1985)).

Clearly a congregation's decision to remove a church leader or determine a person's church membership status inescapably involves ecclesiastical governance matters that this Court has no authority to resolve.  "[A]ny attempt by civil courts to limit a church's choice of its religious representatives would constitute an impermissible burden upon that church's First Amendment rights."  Id. at 611, 553 S.E.2d at 514.

While I concur with the rest of the majority's opinion, I respectfully dissent from its resolution of the defamation claims against Pace and Russell in Count II, because it contravenes our long-standing jurisprudence as expressed in Cha.  Therefore, I would affirm the judgment of the trial court sustaining the demurrer as to Pace and Russell concerning paragraphs 55 through 58 of Count II of the motion for judgment.