316

## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Colia Doles, Sr., et al.

v.

Freddie Rodgers
and Warren F. Curry

May 3, 2007

Case No. CL07-789

BY JUDGE DEAN W. SWORD, JR.

This matter is before the court upon a complaint filed by five members[1] of the New First Baptist Church, Taylorsville (the church) against Freddie Rodgers in his capacity as Chairman of the Board of Deacons of the church and Warren F. Curry in his capacity as Chairman of the Board of Trustees of the church. The complaint seeks injunctive relief as well as a court ordered meeting of the church to consider (or perhaps reconsider) a decision to discharge the pastor, Marcus D. Brown, Sr.

The defendants have filed an answer challenging (1) whether the court has subject matter jurisdiction and (2) that the discharge of the pastor was improper. For the reasons stated hereafter, the court finds that it does have subject matter jurisdiction, albeit very limited, but, upon the consideration of the evidence heard at the April 30, 2007, hearing, denies the relief requested and dismisses the complaint.

---

[1] Four of the complainants are members of the Board of Deacons and one is a member of the Board of Trustees.

 

*Facts*

The church may fairly be described as a "congregational" body with no written constitution and/or bylaws. Testimony presented by both defendants suggest that most decisions concerning the operation of the church are made by the Board of Deacons and the Board of Trustees who typically meet as a "unified board" on the last Monday of each month.

Mr. Bernard Griffin testified that he had been a church member for 52 years and this "unified board" concept had been in place the entire span of his membership.

Further evidence revealed that, from time to time, meetings of the entire congregation are held after notice in the church bulletin and orally at church services. It was suggested that the notice was typically given two weeks prior to any meeting, but there was also some evidence that shorter notice has occurred recently. There is no precedent for notice of an "emergency meeting" nor is there any definite date for an annual meeting of the congregation.

Apparently a dispute arose over the performance of the pastor, and the defendants, in their respective capacities as chairmen, called a special meeting of the "unified board" on March 10, 2007, to consider the dispute. The court took no evidence as to the underlying nature of the dispute and is of the opinion that it would be highly improper to do so.

This meeting was truly special because the undisputed testimony is that the five plaintiffs were neither invited nor given any notice. Evidence reveals that Mr. Whitehead has been ill and unable to attend meetings and was not present at the court hearing. Mr. Rodgers candidly acknowledged that he was aware of the support by the plaintiffs for the pastor and, therefore, felt that their presence would not be helpful. He also testified that he thought they would not attend. None of the plaintiffs addressed this, but simply acknowledged their lack of notice.

At this March 10 meeting, the unified board "agreed" to dismiss the pastor subject to an emergency meeting of the congregation. No formal vote was taken, but it was the consensus of those attending that this was a proper action. No evidence established how many of the twelve trustees and eleven deacons attended.

The defendants then proceeded to have notices (Exhibit A) prepared and circulated at Church services held on March 18, 2007. The church bulletin was not used because its content was "controlled by the pastor." Mr. Rodgers

testified that twenty-five members of the church were enlisted as a telephone committee and instructed to call as many members of the church as possible. No evidence was presented as to the effectiveness of this process.

Pursuant to this notice, a meeting of the congregation was held on March 19, 2007, at 7:00 p.m. at Norcum High School in this city. (No one ever explained the use of the school for the meeting, but that in of itself creates no issue since there is no complaint that the location selection was designed to prevent attendance, and, in fact, the school is within several miles of the church.)

At the meeting of the congregation, the majority voted to confirm the decision of the "unified board" and discharge the pastor.

## *Jurisdiction*

This state and country have a long history of constitutional principles of separation of church and state. For a thorough discussion of both Virginia and federal case law, see *Denny v. Prince*, 68 Va. Cir. 339 (2005), an opinion by Judge Davis of this court. The First Amendment to the United States Constitution and Article I, § 16, of the Constitution of Virginia both largely proscribe the resolution of liturgical issues in the courts. The normal basis for this proscription in Virginia has been to say that the courts of the Commonwealth lack "subject matter jurisdiction." *Cha v. Korean Presbyterian Church*, 262 Va. 604, 612 (2001).

There is, however, a limited exception to this rule, which I believe, applies to this factual matter. *Reid v. Commonwealth*, 229 Va. 179 (1985). A reading of this opinion might at first blush evidence a split in this circuit since we come to a different conclusion than that of Judge Davis in *Denny*. I am quick to note that I am in full agreement with *Denny*, but am of the opinion that our facts are inapposite to *Denny* and thus create a different legal issue and, therefore, a different result.

## *Reid*

The *Reid* case is of a similar (as far as the significant facts go) factual situation. The church involved in the litigation was congregational without constitution and bylaws. A dispute arose between two factions with one of the issues being the removal of the pastor and another being the control and ownership of the church property. *Id.* p. 182. The situation then devolved to several lawsuits challenging the fairness of the process used by the pastor and

his supporters. *Id.* pp. 181-86. The ultimate issue of subject matter jurisdiction arrived at the door of the Virginia Supreme Court after a side trip to the U. S. District Court. In reviewing the matter, the Supreme Court opined:

> When the majority has spoken in a fairly-conducted congregational meeting held after proper notice to the membership, then the governing body of the church has expressed its will and, as in the case of hierarchical church, its decision is constitutionally immune from judicial review. . . .
>
> A member of a congregational church . . . may appeal only to the simple and fundamental principles of democratic government . . . the right to reasonable notice, the right to attend and advocate one's views, and the right to an honest count of the votes.

*Id.* p. 189.

It has been suggested, however, that this rule may not apply when it comes to the selection or retention of the clergy.

> The Free Exercise Clause of the First Amendment to the Constitution of the United States and Article I, § 16, of the Constitution of Virginia do not permit a circuit court to substitute its secular judgment for a church's judgment when the church makes decisions regarding the selection or retention of its pastor.

*Cha, id.* p. 612.

A review of the *Cha* facts, however, reveal that the *process* used to remove the pastor was not the subject of the challenge and, in fact, a properly held meeting was convened. *Cha, Id.* pp 609-10.

The more recent, but not binding, case from Virginia is *Vann v. Guildfield Missionary Baptist Church*, 452 F. Supp. 651 (W.D. Va. 2006). *Vann* was also a dispute over the termination of the pastor of a congregational church. The matter was also a challenge to the subject matter jurisdiction of the court, and Judge Kiser reviewed both *Reid* and *Cha* and acknowledged the general constitutional principles noted here. While acknowledging that a court should not review the decision of a religious body to hire or fire a member of the clergy, Judge Kiser said:

> this rule presupposes that the religious body itself has acted before immunizing the decision from judicial review.

*Vann, id.* p. 655.

Finding that, in *Cha*, there was "action" by the religious body, the judge found that he had jurisdiction. "Civil courts must be able to conduct a limited inquiry to determine if a religious body has actually spoken." *Vann, id.* 656. See also *Graham v. Lockhart*, 42 N.C. App. 377, 379 (1979).

A review of these authorities leads the court to the conclusion that it is proper to conduct a limited review of the *process only* and then make a determination that the basic "fundamental principles of democratic government" have been observed. In making such a determination, I hold that great latitude and deference are to be given to the religious body and I would only intervene in egregious circumstances. For instance, significant issues might require the court to engage in the thicket of religion. Criteria of membership might require an examination of a persons religious principles.

Since the complaint attempts to challenge the process, I will find subject matter jurisdiction for the sole purpose of making a determination as to whether this congregation has acted.

### The Meeting

We have before us two meetings to consider and the effect of each. The "unified special board meeting" held on March 10, 2007, lacks the indicia of legitimacy that one would wish to have. The admitted purposeful exclusion of the plaintiffs certainly deprived them of notice, an opportunity to be heard, and the right to vote. While they represented a minority of each board (four of eleven deacons and one of twelve trustees and thus five of twenty-three of the "unified boards") and may not have been able to change the ultimate outcome, they were certainly duly elected members and entitled to their opportunity. Further, since no "formal action" was taken at the meeting, we could not come to any reasonable conclusion that the body has acted. To find that the body had acted, we would also need to come to a legal conclusion that the "unified board" was entitled to act on behalf of the congregation. While there is evidence in our record tending to support this proposition, the act of submitting board action to a vote of the congregation indicates to me that, before the pastor was discharged, the congregation had to vote. This is true even if the purpose of the vote was to confirm the action taken by the unified board.

The evidence does reveal that at least part of the congregation met, voted, and fired the pastor on March 19, 2007. If we can come to the conclusion that this constitutes a legitimate expression of the majority of this church, then our inquiry ends.

The plaintiffs complain that two weeks notice in the church bulletin is required for a meeting of the congregation and that only one day's notice was given in the form of the flyer. (See Exhibit A.)

While there was some evidence that past meetings had been noticed as suggested, there was also evidence of a weeks notice being given for a recent meeting and no precedent for an emergency meeting. The whole process is vague and uncertain, and the only real conclusion one may reach is that there is no real practice that could be proven, even by a preponderance of the evidence standard.

Thus the court must determine whether, under the circumstances, the one day notice meets a bare legal sufficiency standard. Interestingly enough, the plaintiffs do not complain that the one day notice deprived them of their, or any other members, right to attend. Instead, the complaint is related to some "standard" without showing that any significant number of church members have been excluded from the democratic process. It should be remembered that the plaintiffs had the burden of proof on these issues and largely failed to present evidence in support of their position.

While the notice process used was far from perfect, it does seem to be similar to other notices given in writing by handing out at church services. There is no significance as to form, Exhibit A as opposed to the church bulletin. Written notice was given. Further, a reasonable explanation has been offered for not using the bulletin.

Evidence reveals that a large, but unascertained, number of church members attended the meeting and voted. There is no evidence that members were excluded. Apparently, those members who were interested participated and those who were not interested did not attend. Unfortunately, we constantly see voter turnouts in civil elections in the fifty to sixty percent range and voter apathy is not something the court can remedy. Thus, I find that the congregation acted, the majority had its say, and there is nothing further for this court to do. Therefore, the complaint should be dismissed.