COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Athey and Senior Judge Petty
Argued by videoconference

**UNPUBLISHED**

TODD LESLIE PUCKETT

MEMORANDUM OPINION* BY
v.        Record No. 0443-24-3        JUDGE MARY BENNETT MALVEAUX
MAY 13, 2025

K.S.

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Anne F. Reed, Judge

Juliet M. Bates (Bates Law PLLC, on briefs), for appellant.

J. Michael Sharman (Commonwealth Law Offices, P.C., on brief),
for appellee.

Following a trial on damages, a jury awarded K.S. compensatory and punitive damages on

her counts of assault and battery, sexual assault and battery, and aggravated sexual assault and

battery against Todd Leslie Puckett.  On appeal, Puckett argues that the circuit court erred in: (1)

overruling his demurrer because Virginia does not recognize sexual battery or aggravated sexual

battery as separate civil actions apart from assault and battery; (2) overruling his demurrer and

granting partial summary judgment on the grounds that a person under the age of 18 is not legally

able to consent to sexual activity with an adult; (3) excluding an exhibit related to his divorce from

K.S.'s mother; (4) refusing his proffered jury instructions; and (5) denying his motion to remit the

jury verdict because it was excessive and unsupported by the evidence.  Because we find no merit in

Puckett's arguments related to consent and the amount of the jury verdict, and because we find that

he has waived his remaining arguments, we affirm the decision of the circuit court.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

Between September 1, 2017, and spring of 2018, Puckett, K.S.'s step-father at the time, committed aggravated sexual battery against K.S., who was 16 to 17 years old at the time of the offenses. In 2020, Puckett pleaded guilty to 3 counts of aggravated sexual battery by a step-parent against a child at least 13 but less than 18 years of age, in violation of Code § 18.2-67.3(A)(3).

In 2021, K.S. filed a complaint against Puckett, seeking damages for assault and battery, sexual assault and battery, and aggravated sexual assault and battery.[1]

Puckett filed a demurrer to the complaint. He argued that K.S.'s counts were all based on the same acts and "that the law of Virginia recognizes all three of these counts as variations of assault and battery and not as separate torts." He also asserted that the complaint failed to state a cause of action for assault and battery because it did not allege that his "touches were unwanted or that [K.S.] did not consent." In a response to the demurrer, K.S. asserted that Virginia's statutory and common law recognize separate torts of sexual assault and battery and aggravated sexual assault and battery. K.S. further argued that Puckett's conduct constituted sexual abuse and that as a matter of Virginia law, she could not have consented to the abuse.

The circuit court overruled Puckett's demurrer, concluding that "Virginia law recognizes individual torts of sexual assault and battery and aggravated sexual assault and battery." The circuit court also found that because "Virginia courts have consistently held that a minor cannot legally consent to statutorily proscribed sexual contact," K.S.'s failure to plead lack of consent was not a basis to sustain the demurrer.

---

[1] K.S. also alleged intentional infliction of emotional distress, but later withdrew that count.

K.S. then moved for partial summary judgment, arguing that based on Puckett's guilty pleas, there were no material facts in dispute regarding his liability. The court granted K.S.'s motion and set a trial to hear evidence solely in relation to damages.

Prior to trial, Puckett designated a copy of a settlement letter between his and K.S.'s mother's divorce attorneys as an exhibit. K.S. moved *in limine* to prevent admission of the settlement letter. The circuit court ruled that the letter would be inadmissible at trial.

The case proceeded to trial on damages. At the start of evidence, a set of stipulated facts regarding the sexual abuse were read to the jury, informing them of the parties' ages and that Puckett "has made a written admission that he committed aggravated sexual battery against his stepdaughter [K.S.]." K.S. then testified, stating that she had not consented to the sexual contact with Puckett. She also stated that as a result of the sexual contact, she "struggle[ed] with getting close to people," would "disassociate" and "feel disconnected," had nightmares involving sexual abuse, and blamed herself at times for the abuse. K.S. testified that when she disassociated, she felt the same emotions "as the times when he did the acts." K.S. reported having a troubled relationship with her mother "due to [Puckett] going to jail." She further testified that she believed she would be in counseling throughout her lifetime.

K.S. also testified that she initially saw her counselor, Judith Weaver, in the fall of 2017 for her post-traumatic stress disorder ("PTSD") and an eating disorder related to issues with her biological father and step-mother. She stated that her father had substance abuse issues and her step-mother made disparaging comments to her and that these factors contributed to her problems with nightmares and connecting with others. Prior to the abuse, she also had problems communicating with her mother. K.S. acknowledged that she had a PTSD diagnosis prior to the abuse, but that the abuse "increase[d] those feelings."

Judith Weaver, a licensed professional counselor, was qualified at trial as an expert in clinical psychology and sexual abuse and trauma. When K.S. first saw Weaver in the fall of 2017, during the period of abuse by Puckett, K.S. was experiencing anxiety and depression. Weaver testified that Puckett's abuse "definitely impacted [K.S.]. If she had PTSD before, she had worse PTSD after." She noted that K.S. would "have been able to heal more readily" from her previous trauma with her father and step-mother "if the [abuse from Puckett] had never occurred." She affirmed that healing from childhood sexual abuse was "a lifetime healing" and stated that K.S. "will have a lifetime of counseling." Weaver testified that "[w]omen who blame themselves as children for having been sexually abused had poorer overall adjustment as an adult" and "were more depressed and had lower self-esteem," and that "seem[ed] to fit what [she] s[aw] with [K.S.]." In her last session with K.S., K.S. told her, "I feel like it was my fault. I feel ashamed, dirty, drained, no energy. I wish I hadn't told. I still have recurring memories, flashbacks, dreams of sexual assault, efforts to avoid thoughts, people, places. I feel detached, estranged." K.S. also reported "[s]leep disturbance, nightmares, hypervigilance, anger and irritability" as a result of the sexual abuse.

On cross-examination, when asked "to quantify what issues are going to require the most counseling in the future," Weaver stated that she was unable to differentiate the sexual abuse from K.S.'s childhood mental or emotional abuse. Weaver stated that K.S. "scored as depressed and anxious" on some testing, but acknowledged that she "ha[d]n't done the research on whether those things could potentially come from earlier events." She acknowledged that K.S.'s previous trauma would also cause the same symptoms of anxiety and depression, but also noted that "then, horrible re-victimization happened." She testified that she did not know how to answer the question of "whether it was possible to divide out" the separate traumas experienced by K.S.

Puckett's pretrial deposition was admitted into evidence.  In his deposition, Puckett stated that, based on his conversations with K.S., he believed she was "willing" to engage in the sexual activities underlying his convictions and that they were "[c]onsensual."

The circuit court refused three of Puckett's proposed jury instructions.  Those instructions concerned expert testimony, proximate causes and superseding causes, and the plaintiff's duty to minimize damages.

After hearing the evidence, the jury awarded K.S. $20 million in compensatory damages and $500,000 in punitive damages, plus interest.  After the verdict was announced, Puckett moved the circuit court to set aside the jury verdict, arguing that "$20 million is clearly excessive based on the weight of evidence presented."  The court denied the motion.  The circuit court's final order awarded $20 million in compensatory damages, but pursuant to Code § 8.01-38.1 reduced punitive damages to $350,000.

This appeal followed.

## ANALYSIS

I. <u>Sexual Assault and Battery and Aggravated Sexual Assault and Battery as Causes of Action</u>

Puckett argues that the circuit court erred in overruling his demurrer because separate causes of action for sexual assault and battery and aggravated sexual assault and battery do not exist as independent torts in Virginia.  Puckett contends that although these theories exist in the criminal code, they do not exist in civil law.  Therefore, K.S.'s complaint should have moved forward under only one count of assault and battery.

This issue is a matter of first impression in Virginia.  But it is not one that we reach today because Puckett has failed to provide any legal authority or argument in support of his position.  Rule 5A:20(e) requires that an appellant's opening brief contain the "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of

error." "Statements unsupported by argument, authority, or citations to the record do not permit appellate consideration." *Parks v. Parks*, 52 Va. App. 663, 664 (2008) (quoting *Cirrito v. Cirrito*, 44 Va. App. 287, 302 n.7 (2004)). "We require adherence to this rule because '[a] court of review is entitled to have the issues clearly defined and to cite pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008), *aff'd in part, vacated in part*, 279 Va. 52 (2010)). "To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he raises." *Id.* (alteration in original) (quoting *Jones*, 51 Va. App. at 734-35). "Appellate courts are not unlit rooms where [litigants] may wander blindly about, hoping to stumble upon a reversible error. If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention." *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Bartley*, 67 Va. App. at 746 (quoting *Sneed v. Bd. of Pro. Resp.*, 301 S.W.3d 603, 615 (Tenn. 2010)). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* (quoting *Sneed*, 301 S.W.3d at 615).

Puckett's opening brief contains the correct standard of review for his assignment of error. Following that, his brief contains no citation to any other legal authority. Puckett obliquely references other Virginia circuit court decisions cited below by K.S. These circuit court opinions held that there is an independent tort claim for sexual abuse. But Puckett does not provide citations to these cases, and instead provides a citation to a portion of the record containing these opinions. He does not discuss these authorities, stating only that they are

unpersuasive because "[i]t is apparent from the materials submitted by [K.S.] that there is no broader basis to argue that these independent causes of action have been accepted. Indeed, the authority cited by [K.S.] boils down to three cases in two circuits."

On brief, Puckett also mentions the circuit court's letter opinion, arguing that the court erred in relying on the other circuit court decisions, but again fails to name or cite them. He then states that "[t]he only binding authority cited by the [circuit] court was a 1960 case in which it was acknowledged that the law is intended to adapt to the changing times." Puckett does not provide a citation to the "1960 case" or engage in any further discussion as to why the circuit court's reliance on this case was in error. Puckett concludes his argument on this assignment of error with the assertion, "There is simply no support for the proposition that the separate causes of 'sexual assault and battery' and 'aggravated sexual assault and battery' exist in the civil law of Virginia. The trial court's rulings on this issue were in error."

Puckett's sole argument on brief is that there is no legal authority indicating that sexual assault and battery and aggravated sexual assault and battery are independent tort claims. But, as he acknowledged, the circuit court relied on Virginia circuit court cases and a Virginia Supreme Court case (the "1960 case") in deciding that Virginia law recognizes individual torts of sexual assault and battery and aggravated sexual assault and battery.[2] On brief, Puckett does not discuss the authority cited by the circuit court. While Rule 5A:20 does not require him to respond to the authorities cited by the circuit court, it does require his opening brief to include "principles of law and authorities" related to this assignment of error, and he has failed to do so. Without any argument from Puckett, this Court would become an "advocate" for his position if we "ignore[d]

---

[2] In addition, we note that this specific issue was raised and discussed in a Fourth Circuit federal district court case. *See Kidwell v. Sheetz, Inc.*, 982 F.Supp. 1177 (W.D. Va. 1997) (using Virginia law to assess the defendant's argument that no cause of action for sexual assault and battery exists in Virginia).

[the] rule by addressing the case on the merits." *Bartley*, 67 Va. App. at 744 (quoting *Jones*, 51 Va. App. at 734-35).

Rule 5A:20(e) exists because an appellate court "is entitled to have the issues clearly defined" and to be provided "pertinent authority" by appellants. *Id.* This is especially important, as here, in a case of first impression, where the arguments presented by the parties will shape an opinion of this Court that will be binding or persuasive authority on future litigants raising the same issue. In *Wilson v. Commonwealth*, 54 Va. App. 631, 638-39 (2009), discussing the requirements of Rule 5A:20(e) in cases of first impression, this Court held that "Rule 5A:20 does *not* require appellants to cite cases where no precedent exists or to cite a set number of cases or code sections." But we specifically noted that "[i]n such cases, it is generally sufficient" for an appellant to cite to "any informative or illustrative cases." *Id.* at 638. Here, Puckett could have discussed the cases relied on by the circuit court, or cited decisions by courts in other jurisdictions that have addressed this issue, but he did not.[3] And in another case presenting an issue of first impression, this Court recently declined to consider the issue when the appellant "failed to cite any authority," noting that the issue was "an important question of first impression in Virginia that should be decided only after full briefing." *Moncrieffe v. Deno*, 76 Va. App. 488, 502, 503 (2023). We likewise find that the issue presented here—whether sexual assault and aggravated sexual assault constitute independent tort claims—is an important question that our Court should decide only after a full briefing. Accordingly, we conclude that Puckett's failure to comply with Rule 5A:20(e) is significant and thus this issue is waived.

---

[3] In fact, courts in other jurisdictions have held, as Puckett argues, that sexual abuse is not an independent tort claim separate from assault and battery under that respective state's law. *See, e.g.*, *Madden v. Abate*, 800 F. Supp. 2d 604, 607 (D. Vt. 2011) (holding that sexual assault is not a cause of action under Vermont law); *Lickteig v. Kolar*, 782 N.W.2d 810, 814 (Minn. 2010) (same holding under Minnesota law); *Finley v. Rivas*, 2010 U.S. Dist. LEXIS 77992, at *5 (D. Haw. July 30, 2010) (same holding under Hawaii law).

II. Consent

Puckett also argues that the circuit court erred in overruling his demurrer when it concluded that a person under the age of 18 is not legally able to consent to sexual activity with an adult.

"The purpose of a demurrer is to determine whether a [complaint] states a cause of action upon which the requested relief may be granted." *Collett v. Cordovana*, 290 Va. 139, 144 (2015) (alteration in original) (quoting *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 356-57 (2010)). "If the pleading fails to state a cause of action, then the demurrer should be sustained." *Hartley v. Bd. of Supervisors*, 80 Va. App. 1, 26 (2024) (quoting *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 255 (2017)). "We examine the circuit court's decision to sustain [a] demurrer under a de novo standard of review because it is a pure question of law." *Butler v. Stegmaier*, 77 Va. App. 115, 125 (2023) (alteration in original) (quoting *Wilburn v. Mangano*, 299 Va. 348, 353 (2020)).

In her complaint, K.S. alleged that Puckett committed aggravated sexual battery against her and that she was 16 and 17 years old at the time of this abuse. K.S. specifically alleged that Puckett knowingly and intentionally touched her in a sexual manner, but did not specifically allege that she did not consent to this sexual activity. Puckett therefore argues that K.S.'s claims "alleging assault and battery did not plead that there had been a lack of consent, which is an essential element of that tort,"[4] and thus the circuit court erred in overruling his demurrer.

_____

[4] Although similar, Puckett conflates the elements of assault and battery, which are separate torts rather than one single tort, as Puckett claims. "The tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 265 Va. 12, 16 (2003). "The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Id.* "[T]he difference between them is 'that between physical contact and the mere apprehension of it. One may exist without the other.'" *Id.* (quoting W. Page Keeton, *Prosser and Keeton on Torts* § 10, at 46 (5th ed. 1984)). In her complaint, K.S.'s action for assault and battery contained allegations related to

We disagree. Here, due to her age, K.S. was unable as a matter of law to consent to the sexual activity that occurred with her step-father; thus, consent was not an element of her assault and battery, sexual assault and battery, and aggravated sexual assault and battery claims that was necessary for her to plead.

We find *Parsons v. Parker*, 160 Va. 810 (1933), cited below by K.S., instructive on this issue. In that case, an action was brought against the defendant, who had sexual relations with the plaintiff, a 15-year-old minor. *Id.* at 812. The defendant filed a demurrer, raising the question of whether, under Code § 4414—the predecessor statute to our current carnal knowledge statute, Code § 18.2-63—"a girl in the fifteenth year of her age [can] consent to the act of sexual intercourse with an adult male and then maintain an action for her debauchment?" *Id.* at 812-13. Our Supreme Court noted that "[w]hile the terms of the statute vary the degree of punishment when the female consents to the sexual act, to have carnal knowledge of a female under the age of consent is, under the express terms thereof, made statutory rape." *Id.* at 813. Therefore, "[t]he effect of the statute is to render her in law incapable of giving her consent to the sexual act . . . . The mere act of illicit intercourse constitutes an assault for which the law provides redress sounding in damages." *Id.* at 814.

The Court then addressed the defendant's argument that "the Virginia statute recognizes a qualified consent upon the part of the female, if she be between the ages of fourteen and sixteen years." *Id.* at 816. The Court rejected this argument, holding instead that

_____

both torts; her actions for sexual assault and battery and aggravated sexual assault and battery contained allegations related only to battery. In its ruling on the demurrer, the circuit court addressed consent only in relation to K.S.'s sexual assault and battery and aggravated sexual assault and battery claims. Because no party has raised the issue of whether K.S.'s claim for assault and battery did not need to allege consent as that is not an element of the tort of assault, and because consideration of this issue is not necessary for the resolution of this appeal, we do not address it. *See Theologis v. Weiler*, 76 Va. App. 596, 603 (2023) (noting that this Court has the "obligation to decide cases on the best and narrowest grounds available" (quoting *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022))).

- 10 -

> [p]roof of consent of the female between the designated ages in a criminal prosecution goes merely to a mitigation of punishment and is no bar to the prosecution. By the same token, proof in a civil action, that the female consented to the sexual act does not bar her right of recovery, but is admissible only on the *quantum* of damages.

*Id.*

In this case, Puckett pleaded guilty to three counts of aggravated sexual battery, in violation of Code § 18.2-67.3(A)(3). Code § 18.2-67.3(A)(3) prohibits sexual abuse by a step-parent against a step-child when the step-child is at least 13 but less than 18 years of age. As in *Parsons*, here, "[t]he effect of the statute is to render [K.S.] in law incapable of giving her consent to the sexual act" and "[t]he mere act of illicit intercourse constitutes an assault for which the law provides redress sounding in damages." 160 Va. at 814. Thus, K.S. did not have to allege in her complaint that she did not consent to the sexual activity with Puckett because she was legally incapable of consenting to any sexual act that occurred with her step-father when she was 16 to 17 years old.[5] *See also Restatement (Second) of Torts* § 892C(2) (1979) ("If conduct is made criminal in order to protect a certain class of persons irrespective of their consent, the

---

[5] Arguing to the contrary, that K.S. did not lack the capacity to consent, Puckett relies on *Koffman*. In *Koffman*, the defendant, a middle-school football coach, lifted the plaintiff, a 13-year-old student, off his feet and slammed him to the ground to demonstrate a tackling technique. 265 Va. at 14. The plaintiff filed a complaint alleging, in part, that he was injured as a result of the defendant's intentional acts of assault and battery. *Id.* The defendant demurred, asserting that the complaint did not allege sufficient facts to support a lack of consent to a tackling demonstration and, therefore, did not plead causes of action for either assault or battery. *Id.* at 14-15. The circuit court agreed and dismissed the action. *Id.* at 15. On appeal, our Supreme Court reversed the circuit court, holding that the complaint was sufficient to establish a cause of action for the tort of battery because "[w]hether [plaintiff] consented to be tackled by [defendant] in the manner alleged was a matter of fact." *Id.* at 17.

Puckett contends that because the minor in *Koffman* was able to consent to battery against him, K.S. was likewise able to consent to the battery against her. But the instant case is not one of simple battery, and instead involves allegations of sexual battery. Puckett's argument ignores the holding in *Parsons*, which clearly establishes that K.S. could not have consented to the sexual battery committed against her by Puckett. As we find *Parsons* rather than *Koffman* instructive as to the facts of this case, we find Puckett's reliance on the latter case unpersuasive.

- 11 -

consent of members of that class to the conduct is not effective to bar a tort action.").

Accordingly, because K.S.'s "[complaint] states a cause of action upon which the requested relief may be granted," *Collett*, 290 Va. at 144 (alteration in original) (quoting *Abi-Najm*, 280 Va. at 356-57), we hold that the circuit court did not err in overruling Puckett's demurrer on this basis.[6]

### III. Settlement Letter

Puckett contends that the circuit court erred in failing to admit into evidence a settlement letter between the attorneys representing him and K.S.'s mother during their divorce. Puckett claims that the letter was not inadmissible under Virginia Rule of Evidence 2:408, which prohibits the admission of evidence of settlement offers in certain instances, because it was evidence of motivation, a proper ground for admission of such evidence under the rule. He asserts that the letter contained language that showed K.S.'s motivation in bringing the current action and was relevant to the question of damages.

We are, however, unable to examine the merits of Puckett's argument because the record does not contain a copy of the settlement letter at issue.[7] "[O]n appeal the judgment of the lower

---

[6] Also related to the issue of consent, Puckett contends that K.S.'s ability to consent was a factual question that should have been left to the jury to resolve, thus the circuit court erred in granting partial summary judgment on that issue. "[S]ummary judgment 'shall not be entered' unless no 'material fact is genuinely in dispute on a controlling issue or issues and the moving party is entitled to such judgment as a matter of law.'" *La Bella Dona Skin Care, Inc.*, 294 Va. at 253 (alteration in original) (quoting *Mount Aldie, LLC v. Land Trust of Va., Inc.*, 293 Va. 190, 196 (2017)). Therefore, when an appeal, such as the one before us, arises from a "decision awarding summary judgment, the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review." *Id.* (quoting *Mount Aldie*, 293 Va. at 196-97). As we held above, based on the factual circumstances in this case, K.S. could not have consented to the sexual activities with Puckett as a matter of law. Thus, the issue of consent was not a factual issue that should have gone to the jury, but rather a legal issue, and the circuit court did not err in granting partial summary judgment regarding Puckett's liability.

[7] On brief, Puckett acknowledges that "[b]ecause the letter was not filed with the [circuit] court, it is not, itself, included in the record."

court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." *Crawley v. Ford*, 43 Va. App. 308, 315 (2004) (quoting *Justis v. Young*, 202 Va. 631, 632 (1961)). Without a sufficient record, "we will not consider the point." *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)). Puckett claims that the settlement letter contains evidence showing K.S.'s motivation to file suit against him. But the record does not support this assertion as it lacks the settlement letter itself. And we cannot rely on representations made on brief but unsupported by the record. "An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court." *Pine Hill Grp., LLC v. Nass Grp., LLC*, 76 Va. App. 384, 392 n.4 (2023) (quoting *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993)). "We may act only upon facts contained in the record." *Smith*, 16 Va. App. at 635. Without a copy of the settlement letter, this Court is not able to determine if the letter was admissible under Rule 2:408, and thus we do not address this assignment of error on appeal.

### IV. Jury Instructions

Puckett challenges three of the circuit court's decisions related to jury instructions. He argues that the court erred in refusing a proffered jury instruction relating to multiple proximate causes of injury and superseding causes of injury, and also one he proffered related to expert testimony. Puckett further contends that the court erred in providing the jury an edited version of his proffered jury instruction on consent. Because the record does not demonstrate that these arguments were timely presented to the circuit court, we conclude that Puckett has waived consideration of the jury instruction issues on appeal.

Based on the record before us, we can suspect that arguments concerning jury instructions were presented to the circuit court in chambers prior to the instructions being given

- 13 -

to the jury. At trial, when the circuit court recessed for lunch, the court asked the parties if there was anything that needed to be discussed prior to bringing the jury back in. Counsel for K.S. stated, "I don't think so, unless we wanted to put on the record anything about the chambers discussion," with counsel for Puckett replying, "I'm satisfied with the discussion being in chambers." Later at trial, prior to reading the instructions to the jury, the circuit court asked counsel about any "remaining issues" regarding jury instructions, indicating that there had been a prior discussion about the instructions—presumably a discussion that occurred in chambers, for which there is no transcript in the record. Three of Puckett's proposed jury instructions are included in the record and marked as "refused," but the trial transcript is devoid of any instance where Puckett asked the court to give these instructions and provided argument in their favor.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." Rule 5A:18. "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Jessee v. Jessee*, 74 Va. App. 40, 51 n.8 (2021) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)). With no record of the arguments Puckett made at trial in chambers regarding the jury instructions, we cannot know if he presented the same specific arguments to the circuit court that he now advances on appeal. "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). We conclude that because we have no record of the arguments made to the circuit court concerning Puckett's proposed jury instructions, he has waived any argument on appeal related to those issues.

Puckett, however, contends that he did preserve his jury instruction arguments by noting them as objections on the circuit court's final order. These objections, however, came too late.

"Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Zeng v. Charles Wang*, 82 Va. App. 326, 346 (2024) (alteration in original) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Bethea*, 297 Va. at 743). Concerning jury instructions, "[g]enerally, the reasons for objecting to the grant or refusal of a jury instruction must be presented to the trial court before such objection will be considered on appeal. *The objection must be made in the trial court when the instruction is tendered*." *Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 97 (2012) (quoting *Morgen Indus. v. Vaughan*, 252 Va. 60, 67-68 (1996)). Here, the objections listed on the final order did not provide the circuit court with the opportunity to correct the error alleged by Puckett. Any error in refusing his proffered instructions had to be addressed prior to when the instructions were given to the jury; therefore, Puckett's objections on the final order did not preserve his jury instruction arguments for appellate review.[8]

---

[8] We also note that Puckett has waived his jury instruction arguments because his opening brief does not contain legal authority pertaining to those arguments. On brief, Puckett claims the circuit court erred in refusing his proffered jury instruction relating to multiple proximate causes of injury and superseding causes of injury, but provides no authority as to why this set of instructions was appropriate in this case. He then asserts that the court erred in delivering an edited version of his proffered jury instruction on consent "that was confusing and potentially misleading to the jury," but provides no case law on when jury instructions should not be given due to their ability to confuse the jury. Lastly, he argues that the court erred in refusing his proffered jury instruction concerning expert testimony provided at trial, but provides no case law as to why a limiting instruction about the weight to be afforded to expert testimony based on speculation should have gone to the jury. *See* Rule 5A:20(e); *Parks*, 52 Va. App. at 664 ("[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" (second alteration in original) (quoting *Jay v. Commonwealth*, 275 Va. 510, 520 (2008))).

V. Jury Verdict Amount

Puckett argues that the circuit court erred in not remitting the jury's verdict because it was "clearly excessive and unsupported by evidence."[9]

"[C]ompensatory damages are those allowed as a recompense for loss or injury actually received and include loss occurring to property, necessary expenses, insult, pain, mental suffering, injury to the reputation and the like." *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 625 (2021) (quoting *Giant of Virginia., Inc. v. Pigg*, 207 Va. 679, 685 (1967)). "Whether a verdict is excessive is left to the discretion of the trial court." *Allstate Ins. Co. v. Wade*, 265 Va. 383, 395 (2003). "'There is no fixed standard for measuring compensatory damages, and the amount of the award is largely a matter of [jury] discretion . . . based on the facts and circumstances of each' case." *Nestler v. Scarabelli*, 77 Va. App. 440, 462 (2023) (alterations in original) (quoting *Gazette, Inc. v. Harris*, 229 Va. 1, 41 (1985)).

> A verdict is excessive when it shocks the conscience of the court and creates the impression that the jury was biased or prejudiced against a party, or misunderstood the facts or the law, or suggests that it was not the product of fair and impartial decision making because it is so disproportionate to the injuries incurred.

*Allstate Ins. Co.*, 265 Va. at 394-95. "In conducting this review, courts view the evidence in the light most favorable to the prevailing party below, in this case, [K.S.]." *City-To-City Auto Sales, LLC v. Harris*, 78 Va. App. 334, 348 (2023). "'If there is evidence, when viewed in that light, to sustain the jury verdict,' a circuit court must accept the jury's award of damages." *Id.* at 348-49 (quoting *Shepard v. Capitol Foundry of Va., Inc.*, 262 Va. 715, 721 (2001)).

---

[9] While Puckett's assignment of error challenges the jury verdict generally as excessive, on brief, he provides argument only in relation to the $20 million awarded in compensatory damages, not the punitive damages award. Therefore, we only address the compensatory damages award on appeal. *See* Rule 5A:20(e).

Puckett asserts that the $20 million compensatory damages award was "facially excessive," given the actual damages suffered by K.S. from his acts as opposed to the acts of her other family members. We find no merit in this argument.

At trial, K.S. testified that, as a result of the sexual abuse, she "struggle[ed] with getting close to people," would "disassociate" and "feel disconnected," had nightmares involving sexual abuse, and sometimes blamed herself for the abuse. When she disassociated, K.S. felt the same emotions "as the times when [Puckett] did the acts." She also reported feelings of "hypervigilance, anger and irritability." Weaver, her counselor, opined that K.S. would need a lifetime of counseling. Weaver also testified that "[w]omen who blame themselves as children for having been sexually abused had poorer overall adjustment as an adult" and "were more depressed and had lower self-esteem," and that experience seemed to appear in K.S.

While acknowledging that he bears some "responsibility for his actions toward [K.S.]," Puckett discounts the significance of K.S. and Weaver's testimony and instead highlights the abuse K.S. suffered from her father and step-mother prior to Puckett's sexual abuse. He argues that the jury verdict did not reflect the fact that not all of the abuse K.S. suffered was a direct result of his sexual abuse of her.[10] But K.S. specifically testified that although she had problems stemming from other family members' conduct prior to Puckett's sexual abuse, the sexual abuse "increase[d] those feelings." Weaver also testified that Puckett's abuse "definitely impacted [K.S.]" and made her PTSD "worse" and that K.S. would "have been able to heal more readily"

---

[10] On brief, Puckett also asserts that the amount of time the jury spent deliberating, which the record reflects was 36 minutes, demonstrates a lack of careful deliberation that resulted in an excessive verdict. Puckett, however, failed to make this particular argument to the circuit court. Below, he argued solely that the verdict was excessive "based on the weight of the evidence presented." Thus, we do not address this argument on appeal. We do note, though, that "[b]rief deliberation, by itself, does not show that the jury failed to give full, conscientious or impartial consideration to the evidence." *Wilburn v. Eastman Kodak Co.*, 180 F.3d 475, 476 (2d Cir. 1999).

from her previous trauma from her father and step-mother "if the [abuse] had never occurred." In total, viewing the evidence in the light most favorable to K.S., we conclude that her testimony describing how Puckett's conduct made her disassociate, suffer from nightmares, feel anger and hypervigilance and disconnected from others, and her need for lifetime counseling, were sufficient to support the jury's verdict. Thus, the circuit court's approval of the jury's damages awards was not plainly wrong.[11]

CONCLUSION

For the reasons stated above, we affirm the decision of the circuit court.

*Affirmed.*

---

[11] In her complaint, K.S. prayed for $7,177,000 in both compensatory and punitive damages, but the jury awarded significantly more than this. "In Virginia, a plaintiff cannot recover more than he sues for though he can recover less." *Coady v. Strategic Resources, Inc.*, 258 Va. 12, 19 (1999) (quoting *Powell v. Sears, Roebuck & Co.*, 231 Va. 464, 469 (1986)). But Puckett did not raise the disparity between K.S.'s ad damnum and the jury verdict before the circuit court or on appeal, thus this issue has been waived. *See* Rule 5A:18; Rule 5A:20(c)(1).